IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD NICOL, ET AL.,<br><br>     Plaintiffs,<br><br>  vs.<br><br>KAANAPALI GOLF ESTATES COMMUNITY ASSOCIATION, INC., ET AL.,<br><br>     Defendants. | CIV. NO. 17-00251 JMS-KJM<br><br>ORDER GRANTING PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(F) |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(F)

## I. <u>INTRODUCTION</u>

This case stems from a bitter dispute over short-term vacations rentals at the Kaanapali Golf Estates ("KGE"), a luxury residential community on Maui. Essentially, Plaintiffs, KGE property owners, allege that Defendants, former board members of the Kaanapali Golf Estates Community Association ("KGECA"), acted wrongfully in their personal capacities when they attempted to enforce KGECA restrictions on vacation rentals of less than 180 days.[1]  Here, pursuant to

---

[1] Initially, Plaintiffs also alleged that Defendants acted wrongfully in drafting, putting to a vote, and enacting an amendment to the KGE Covenants, Conditions, and Restrictions to prohibit vacation rentals of less than 180 days.  *See generally* ECF No. 1.  But these claims were

(continued . . . )

Federal Rule of Civil Procedure 56(f), the court considers whether to sua sponte grant summary judgment as to four of Plaintiffs' claims: (1) breach of contract; (2) breach of good faith and fair dealing; (3) violation of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq.; and (4) violation of the State of Hawaii RICO Act, Hawaii Revised Statutes ("HRS") Chapter 842.

After carefully considering the parties' arguments and the evidentiary record, the court determines that none of these claims can survive summary judgment.  Accordingly, the court GRANTS summary judgment in favor of Defendants as to the breach of contract claim, breach of good faith and fair dealing claim, federal RICO claim, and state RICO claim.

## II. <u>BACKGROUND</u>

Plaintiffs initiated this case in May 2017, alleging 16 separate claims against the KGECA and former KGECA board members in both their official and personal capacities.  ECF No. 1.  They alleged that the KGECA and its board had wrongfully drafted, put to a vote, enacted, and enforced a 2014 amendment to the KGECA Covenants, Conditions, and Restrictions ("CC&Rs") to prohibit short-term vacation rentals of less than 180 days (the "2014 Amendment").  *Id.*  In

---

dispensed with at the summary judgment stage, *see* ECF No. 66, leaving before the court only Plaintiffs' allegations regarding Defendants' attempts to enforce the restrictions.

November 2017, all claims against the KGECA and its board members in their official capacities were submitted to binding arbitration as required by the KGECA CC&Rs. ECF No. 29. The arbitration panel dismissed all claims against the KGECA and the board members in their official capacity. *See* ECF No. 36. Based on the results of arbitration, the parties agreed that the only claims that remained before this court were the 16 claims against the board members in their individual capacities. *See* ECF Nos. 29, 48.

On June 16, 2020, Defendants moved for summary judgment. ECF No. 50. In their Motion, however, Defendants did not address any of the individual claims against them, instead arguing that because the board members did not act with gross negligence, they could not be held personally liable for any claim. *Id.* at PageID # 1657. At no point during the summary judgment proceedings did either party attempt to address the viability of any specific claim or address any other ground for summary judgment. *See* ECF No. 66 at PageID # 2976-77.

On October 6, 2020, the court issued an Order granting partial summary judgment, ECF No. 66. The court limited its analysis to the specific issue raised by the Motion—whether Defendants acted with gross negligence. *Id.* at PageID # 2950. On that basis, the court granted summary judgment as to all allegations related to the voting process used to ratify the 2014 Amendment and

related to drafting and recording that Amendment.  *Id.*  But the court denied the Motion with respect to Plaintiffs' allegations of "unwarranted and wrongful invasions of privacy, trespassing, and harassment" perpetrated by Defendants while enforcing short-term vacation rental rules.  *Id.* at PageID # 2975 (quoting ECF No. 60 at PageID # 2419).  Specifically, the court ruled that Plaintiffs' claims could survive to the extent they arose from allegations that:

> (1)  Defendants and their agents entered Plaintiffs' homes unannounced and without permission; and
>
> (2)  Defendants and their agents surveilled Plaintiffs and their families, including by covertly taking photographs of them in their homes.

*Id.* at PageID # 2975.

The court then ordered "the parties to confer in an effort to reach a stipulation as to which claims and defendants survive this Order."  *Id.* at PageID # 2977.  On April 20, 2021, the parties submitted a Stipulation for Partial Dismissal of Claims, ECF No. 85, in which they agreed to dismiss 8 of the 16 claims.[2]  Pursuant to the Stipulation, the following claims remained:

---

[2] Specifically, the parties agreed to dismiss Plaintiffs' claims for (1) Declaratory and Injunctive Relief—Reserve Obligation (First Claim); (2) Declaratory and Injunctive Relief—2014 Amendment Void (Second Claim); (3) Constitutional Due Process Violation pursued under a Private Right of  Action 42 U.S.C. § 1983 (Tenth Claim); (4) Uniform Land Sales Practices Act (Eleventh Claim); (5) Unjust Enrichment (Fifth Claim) as against Defendant Halpin; (6) Unfair and Deceptive Trade Practices (Seventh Claim); and (7) Aiding and Abetting (Fifteenth Claim).  ECF No. 85 at PageID # 3331.  In addition, though the stipulation did not reference Plaintiffs' Federal Takings Claims (Sixteenth Claim), Plaintiffs' counsel clarified at the June 22, 2021 Motion Hearing that this claim, too, should be dismissed.  *See* ECF No. 91.

- Breach of Fiduciary Duty (Third Claim)
- Breach of Contract (Fourth Claim)
- Breach of Good Faith and Fair Dealing (Sixth Claim)
- Federal RICO (Eight Claim)
- Hawaii RICO (Ninth Claim)
- Condominium Property Act (Twelfth Claim)
- Invasion of Privacy (Thirteenth Claim)
- Trespass (Fourteenth Claim)

*See* ECF No. 85; *see also* ECF No. 92 at PageID # 3451.

In reviewing the Complaint, the evidence in the record, and the October 6, 2020 Summary Judgment Order ahead of trial, the court became concerned that many of the remaining claims could not realistically survive summary judgment. *See* ECF No. 92 at PageID # 3451. On June 22, 2021, the court held a hearing to discuss, among other things, the viability of Plaintiffs' remaining claims under a summary judgment standard. ECF No. 91. Prior to the hearing, the court advised the parties that they "should come prepared to address whether and why each of the remaining claims should proceed to trial," and warned that "[i]f the parties cannot articulate credible reasons why the claims should proceed, the court is inclined to consider summary judgment sua sponte pursuant to Federal Rule of Civil Procedure 56(f)." ECF No. 89 at PageID # 3442.

At the hearing, counsel for both parties were unprepared to realistically evaluate which claims should survive summary judgment. *See* ECF

No. 92 at PageID # 3452.  Thus, the court orally ruled that it would consider summary judgment sua sponte pursuant to Rule 56(f) with respect to five of the remaining claims:

- Breach of Contract (Fourth Claim)
- Breach of Good Faith and Fair Dealing (Sixth Claim)
- Federal RICO (Eighth Claim)
- Hawaii RICO (Ninth Claim)
- Condominium Property Act (Twelfth Claim)

ECF No. 92 at PageID # 3453.[3]

Pursuant to Rule 56(f), the court issued a "Rule 56(f) Notice," in which it identified the deficiencies in each of these claims and ordered the parties to submit briefing addressing whether each of these five claims should survive summary judgment.  *Id.* at PageID # 3456.  Plaintiffs submitted a brief in response on July 16, 2021, ECF No. 93.  In that brief, Plaintiffs concede that their Condominium Property Act claim should be dismissed, *id.* at PageID # 3460 n.1, but assert that their claims for Breach of Contract, Breach of Good Faith and Fair Dealing, Federal RICO, and Hawaii RICO should survive.  Defendants submitted their reply brief on July 23, 2021, ECF No. 95.  This matter is decided without a hearing pursuant to Local Rule 7.1(c).

---

[3] The court does not consider whether summary judgment is appropriate for Plaintiffs' remaining claims—Breach of Fiduciary Duty (Third Claim), Trespass (Fourteenth Claim), and Invasion of Privacy (Thirteenth Claim).

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(f) governs a district court's ability to grant summary judgment sua sponte.  It provides that "[a]fter giving notice and a reasonable time to respond," the court may "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f).  "Sua sponte grants of summary judgment are only appropriate if the losing party has 'reasonable notice that the sufficiency of his or her claim will be in issue.'"  *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (quoting *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993)).

Federal Rule of Civil Procedure 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV.  <u>ANALYSIS</u>

In its prior Order granting summary judgment, ECF No. 66, the court ruled that only certain of Plaintiffs' allegations survive—allegations that Defendants (1) entered Plaintiffs' homes unannounced and without permission; and (2) surveilled Plaintiffs and their families, including by covertly taking photographs of them in their homes.  Thus, the only question currently before the court is whether these allegations state a claim against Defendants in their personal capacities for (1) breach of contract; (2) breach of good faith and fair dealing; (3) federal RICO; or (4) state RICO.[4]

///

///

---

[4] Both parties devoted much of their briefing to irrelevant facts and to arguments that have already been rejected by the court.  The court disregards these irrelevant and unhelpful facts and arguments.

**A.     Standard for Board Member Personal Liability**

The personal liability of board members is governed by HRS § 414D-149, which provides general standards for directors of non-profit corporations.  As relevant here, § 414D-149 provides that "[a]ny person who serves as a director to the corporation without remuneration or expectation of remuneration shall not be liable for damage, injury, or loss caused by or resulting from the person's performance of, or failure to perform duties of, the position to which the person was elected or appointed, unless the person was grossly negligent in the performance of, or failure to perform, such duties."  HRS § 414D-149(f); *see also Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1180-81 (9th Cir. 2006) (dismissing claim against condominium association's officers and directors because the plaintiff "failed to even allege gross negligence on their part, as required by [HRS § 414D-149(f)]"); *Mansha Consulting LLC v. Alakai*, 236 F. Supp. 3d 1267, 1279-80 (D. Haw. 2017) (finding defendant board chair not liable for breach of fiduciary duty because the plaintiff failed to allege that the defendant was grossly negligent as required under HRS § 414D-149); *Est. of Rogers v. AOAO Maluna Kai Ests.*, 2008 WL 11344919, at *3 (D. Haw. 2008).  Simply put, Defendants cannot be held liable in their personal capacities unless their conduct was at least grossly negligent.

In Hawaii, courts recognize gross negligence as "an 'entire want of care' which raises a presumption of 'conscious indifference to consequences.'" *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1234 (D. Haw. 2010) (quoting *Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1154 (D. Haw. 2009)); *see also Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999) (describing gross negligence as "'[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another; such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness'" (quoting Black's Law Dictionary 1185 (4th ed. 1968))); *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 286, 293, 944 P.2d 83, 90 (Haw. Ct. App. 1997) (noting that gross negligence has been defined as "[i]ndifference to a present legal duty and utter forgetfulness of legal obligations so far as other persons may be affected") (internal citation and quotation omitted).

## B.     Breach of Contract

Plaintiffs allege that the KGE CC&Rs constitute a contract, and that Defendants have breached that contract in two ways. The court assumes for the purposes of this Order that the CC&Rs do constitute a contract. But even so, both of Plaintiffs' breach of contract theories fail.

Plaintiffs first allege that Defendants breached the CC&Rs by failing

to "participate in mediation in accordance with the Alternative Dispute Resolution

('ADR') provision" when imposing fines against Plaintiffs for alleged violations of

short-term vacation rental rules and seeking payments for fines assessed.  ECF No.

93 at PageID ## 3470-71.  The ADR provision, Article XVII, provides that all

parties bound by the CC&Rs must submit legal claims to ADR rather than pursue

litigation.  Specifically, Article XVII § 1 provides that, subject to certain

exceptions:

> [All] claims, grievances, or disputes arising out of or
> relating to the interpretation, application or enforcement
> of this Declaration, the By-Laws, the Association rules,
> or the Articles of Incorporation . . . *shall be resolved*
> *using [ADR] in lieu of filing a suit in any court or*
> *initiating proceedings before any administrative tribunal*
> *seeking redress or resolution of such Claim*.

ECF No. 51-22 at PageID # 2074 (emphasis added).[5]

The language of this provision is plain and unambiguous: bound

parties who wish to initiate litigation—whether before a court or an administrative

tribunal—must instead submit to ADR.  The court gives the provision that effect.

*See Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 108, 839 P.2d 10,

24 (Haw. 1992) ("[I]t is fundamental that terms of a contract should be interpreted

---

[5] Plaintiffs allege that Defendants breached Article XVII § 3.  *See* ECF No. 93 at PageID # 3471.  But § 3 does not impose any substantive requirements; it merely sets out the ADR procedures that parties must follow under § 1.  *See* ECF No. 51-22 at PageID ## 2075-76.

11

according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning.")

And with that understanding, Plaintiffs have provided absolutely no evidence that Defendants violated the ADR provision.  In fact, the only evidence Plaintiffs proffer is a letter from the KGECA imposing a fine on Plaintiff Nicol, advising him that the fine constitutes a lien on his property, and advising him that he may "challenge this Notice by presenting a written request within ten (10) days of receipt of this Notice to the Board of Directors for a hearing."  ECF No. 93-18 at PageID # 3645.  Plaintiffs argue that this letter demonstrates that Defendants breached Article XVII because Mr. Nicol was "threatened with a lien without any recourse to the ADR provision in the CC&Rs."  ECF No. 93 at PageID # 3468.  But the letter does not trigger the ADR provision in the first instance.  It does not seek to initiate a suit against Mr. Nicol before a legal or administrative tribunal, it merely imposes a fine and provides him with an opportunity to challenge that fine.  Article XVII only imposes ADR where parties seek to initiate suit; fines imposed by the KGECA Board do not trigger mandatory ADR under the plain language of Article XVII.  Plaintiffs' first breach of contract theory fails. [6]

---

[6] Plaintiffs also cite to a pre-arbitration order in which the arbitration panel noted that the ADR provisions "were not observed."  ECF No. 93-19.  But the panel was discussing a foreclosure action that the KGECA Board initiated against Paul Winkler, an individual who is not a party in the present action.  *Id.*  The ADR provision would have been implicated by this foreclosure action because such an action is a proceeding before a legal tribunal.  But that fact is

(continued . . . )

Second, Plaintiffs allege that Defendants breached CC&R Article XII, Section 5, which, Plaintiffs assert, "provides in relevant part":

> No noxious, illegal, or offensive activity shall be carried on upon any portion of the Common Areas, or on any portion of a Unit outside of an enclosed structure, which in the determination of the Board of Directors tends to cause embarrassment, discomfort, annoyance, or nuisance to persons using the Common Areas or the occupants and Invitees of other Units.

ECF No. 51-22 at PageID # 2059.

Plaintiffs allege that Defendants breached this provision by instructing their employees to "harass owners and their guests."  ECF No. 93 at PageID # 3471.  Plaintiffs do not elaborate on what this statement means, but the court assumes that Plaintiffs are referring to their surviving claims that Defendants and their agents trespassed on Plaintiffs' property and surveilled them in their homes.

As Plaintiffs themselves admit, however, this alleged conduct falls outside the ordinary scope of Article XII, Section 5, which is "normally used by boards to regulate disputes between neighbors."  ECF No. 93 at PageID # 3471.  Indeed, the plain language of Section 5 leaves it to the board to determine whether any individual owner's conduct violates the provision.  ECF No. 51-22 at PageID

---

irrelevant to this case.  Plaintiffs have not alleged that Defendants initiated a legal or administrative case against them.  The ADR provision is not implicated here.

# 2059 (prohibiting activity, "which *in the determination of the Board of Directors*, tends to cause embarrassment, discomfort, annoyance, or nuisance") (emphasis added). The plain language of the contract simply does not support Plaintiffs' contention that Defendants' efforts to enforce the CC&Rs—even if those efforts amounted to trespass or invasion of privacy—constitutes a breach of Article XII, Section 5.

Further, "'[a] written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations.'" *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011) (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)); *Maui Land & Pineapple Co. v. Dillingham Corp.*, 67 Haw. 4, 11, 674 P.2d 390, 395 (1984) ("'[A]n agreement should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause'" (quoting *Ching v. Hawaiian Rests., Ltd.*, 50 Haw. 563, 565, 445 P.2d 370, 372 (1968))). And placing the portion of Section 5 relied upon by Plaintiffs in the broader context of the CC&Rs, there is no question that Defendants' alleged conduct does not implicate that provision. First, Section 5, titled "Quiet Enjoyment," places restrictions on the activities of unit owners that may annoy or otherwise disturb their neighbors. For example, beyond the provision quoted by Plaintiffs, Section 5 requires owners to keep their

properties clean, prohibits loud noises, and prohibits certain disruptive activities such as outside burning and fireworks.  ECF No. 51-22 at PageID # 2059.  These prohibitions demonstrate that Section 5 is intended to regulate the conduct of owners that would interfere with the peace and quiet of their neighbors—not the conduct of the board in enforcing provisions of the CC&Rs.

This conclusion is strengthened by examining the other provisions contained in Article XII, which is titled "use restrictions."  *Id.* at PageID # 2057. Like Section 5, the other sections contained in Article XII set forth rules governing the conduct of owners on their property and in common areas, including parking, animals and pets, drainage and septic systems, irrigation, removal of plants and trees, air conditioning units, and fences.  *Id.* at PageID ## 2058-2063.

In short, Article XII sets forth the standards that individual owners must abide by as residents of KGE.  The wrongful enforcement actions Plaintiffs allege are not covered by this provision of the CC&Rs.  Plaintiffs' second breach of contract theory, too, fails.  Plaintiffs may attempt to seek remedy for the alleged conduct through their trespass and invasion of privacy claims, but breach of contract is not an appropriate avenue through which to seek relief.

## C.    Breach of Good Faith and Fair Dealing

Next, Plaintiffs assert a tort cause of action for "breach of good faith and fair dealing."  *See* ECF No. 93 at PageID ## 3475-76 (characterizing claim as

the tort of bad faith).  This claim fails.  First, "Hawaii law generally does not recognize tort claims for breach of good faith or fair dealing outside the insurance context."  *Marisco, Ltd. v. GL Eng'g & Constr. Pte., Ltd.*, 2020 WL 3492572, at *6 (D. Haw. June 26, 2020) (citation omitted).  Indeed, in 2007, the Hawaii Supreme Court expressly held that "there is no tort of bad faith outside the context of insurance claims."  *Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship*, 115 Haw. 201, 229, 166 P.3d 961, 990 (2007).  Plaintiffs nevertheless argue under an older case, *Francis v. Lee Enterprises, Inc.*, 89 Haw. 234, 971 P.2d 707 (1999), that claims of bad faith may be recognized in a wider range of situations "involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion."  *Id.* at 238, P.2d at 711.  They assert that Defendants, as board members of the KGECA, held a fiduciary duty to all KGE owners, including Plaintiffs, "to comply with the CC&R[s] and to protect the property interests of the KGE members."  ECF No. 93 at PageID # 3476.  And they assert that Defendants breached that duty because "Defendants [*sic*] enforcement actions before and after the 2014 Leasing Amendment were made without either purpose in mind."  *Id.*

As a preliminary matter, it is somewhat unclear that a bad faith claim may *still* be found outside of the insurance context given the Hawaii Supreme Court's statement in *Laeroc* (which did not specifically overrule or address

16

*Francis*).  But even assuming that it is *possible* to state a bad faith claim based on a non-insurance contract involving a fiduciary relationship, Plaintiffs' claim would still fail.  As the cases Plaintiffs cite explain, board members owe a fiduciary duty to the *corporation* they represent—in this case KGECA.  *See, e.g.*, *Hawaiian Int'l Fin. v. Pablo*, 53 Haw. 149, 153, 488 P.2d 1172, 1175 (1971) ("It is a well-established rule both in Hawaii and in a majority of the states that the relation of directors *to the corporations they represent* is a fiduciary one.") (emphasis added); *Lum v. Kwong*, 39 Haw. 532, 538 (1952) ("*The relation of directors to corporations* is a fiduciary one.") (emphasis added); *see also* HRS § 514B-106 ("[O]fficers and members of the board shall owe *the association* a fiduciary duty.") (emphasis added); *DeRosa v. Ass'n of Apartment Owners of the Golf Villas*, 185 F. Supp. 3d 1247, 1253-54 (D. Haw. 2016) (rejecting argument that board of directors of apartment owners' association owes a fiduciary duty to the *members* of the association, and explaining that the board instead owes that duty to the *association*).  And a corporation might, in certain cases, owe a fiduciary duty to its members.  *See, e.g.*, *Memminger v. Summit at Kaneohe Bay Ass'n*, 129 Haw. 426, 301 P.3d 1267 (Haw. Ct. App. 2013) (mem.) ("The fiduciary nature of the relationship between an association and its members*, might, under some circumstances*, provide a basis to impose an affirmative duty upon the association to safeguard its members.") (emphasis added).

17

But neither strand of case law provides Plaintiffs with any support. The duty of board members extends only to the corporation—in this case the KGECA—not to the individual owners in the KGE community, such as Plaintiffs. And while the corporation itself *may* have a fiduciary duty to individual owners, all of Plaintiffs' claims against the KGECA itself were dismissed in arbitration. There is absolutely no legal support for the proposition that Defendants, as KGECA board members, owe Plaintiffs, as individual KGE owners, a fiduciary duty. Plaintiffs' breach of good faith and fair dealing claim fails as a matter of law.

## D.   Federal and State RICO Claims

Finally, Plaintiffs allege that Defendants violated both federal and State of Hawaii RICO laws. Under both state and federal law, "[t]he elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks and citation omitted)); *see also State v. Ontai*, 84 Haw. 56, 61, 929 P.2d 69, 74 (1996) (explaining that the federal and Hawaii state RICO statues are "virtually identical" and that Hawaii courts "resort to federal case law" when applying the state RICO statute); *DeRosa*, 185 F. Supp.

3d at 1262 ("Hawaii courts look to federal [RICO] statutes in interpreting [HRS] Chapter 842.").

Plaintiffs have failed to supply any evidence that Defendants engaged in racketeering activity.  For the purposes of federal RICO, "racketeering activity" includes, as relevant here, "any act which is indictable" under the mail fraud statute, 18 U.S.C. § 1341, or "any act or threat involving . . . extortion, . . . which is chargeable under State law."  18 U.S.C. § 1961(1)(A),(B).  And for the purpose of State of Hawaii RICO, "'[r]acketeering activity' means any act or threat involving but not limited to murder, kidnapping, gambling, criminal property damage, robbery, bribery, extortion, labor trafficking, unlicensed sale of liquor, theft, or prostitution, or any dealing in narcotic or other dangerous drugs that is chargeable as a crime under state law and punishable by imprisonment for more than one year."  HRS § 842-1.  Plaintiffs allege that Defendants engaged in racketeering activity under both state and federal law by committing "extortion" in violation of HRS § 707-764.[7]  In addition, Plaintiffs allege that Defendants engaged in

---

[7] Extortion under the Hobbs Act, 18 U.S.C. § 1951, is also a federal RICO predicate. Plaintiffs do not allege Hobbs Act extortion, but even if they did, this argument would fail.  The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  As set forth in more detail below, Plaintiffs have provided no evidence that Defendants either engaged in or threatened force, violence, or fear, nor that they did anything wrongful under color of official right.

racketeering activity under federal law by committing mail fraud in violation of 18 U.S.C. §1341.  Both theories fail.

First, Plaintiffs have failed to demonstrate that Defendants engaged in extortion.  HRS § 707-764 defines "extortion" as "[o]btain[ing], or exert[ing] control over, the property, labor, or services of another with intent to deprive another of property, labor, or services by threatening by word or conduct to" engage in at least one of a number of acts specified in the statute.[8]

---

[8] These acts are:

    (a) Cause bodily injury in the future to the person threatened or to any other person;

    (b) Cause damage to property or cause damage, as defined in section 708-890, to a computer, computer system, or computer network;

    (c) Subject the person threatened or any other person to physical confinement or restraint;

    (d) Commit a penal offense;

    (e) Accuse some person of any offense or cause a penal charge to be instituted against some person;

    (f) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt, or ridicule, or to impair the threatened person's credit or business repute;

    (g) Reveal any information sought to be concealed by the person threatened or any other person;

    (h) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense;

    (i) Take or withhold action as a public servant, or cause a public servant to take or withhold such action;

    (j) Bring about or continue a strike, boycott, or other similar collective action, to obtain property that is not demanded or received for the benefit of the group that the defendant purports to represent;

    (k) Destroy, conceal, remove, confiscate, or possess any actual or purported passport, or any other actual or purported

(continued . . . )

Here, Plaintiffs allege that Defendants engaged in extortion by hiring a "secret TVR shopper" to inquire about short-term vacation rentals at Plaintiffs' property and imposing fines if Plaintiffs expressed interest in renting to the secret shopper.  ECF No. 93 at PageID ## 3481-82.  They allege that this conduct is extortionary because the fines were improperly imposed by Defendants.  *Id.*  But this does not amount to extortion.[9]  "[W]ithout more, even showing a defendant substantially harmed a plaintiff's financial condition is not enough to prove a racketeering claim based on extortion."  *Zyda v. Four Seasons Hotels and Resorts Four Seasons Holdings, Inc.*, 2018 WL 4656391, at *5 (D. Haw. Sept. 27, 2018).  Plaintiffs must also put forth evidence showing that Defendants used "threatening word or conduct" in one of the statutorily enumerated ways to deprive them of property.  *Id.*  Plaintiffs have failed to do so.

---

government identification document, or other immigration document, of another person; or

(l)   Do any other act that would not in itself substantially benefit the defendant but that is calculated to harm substantially some person with respect to the threatened person's health, safety, business, calling, career, financial condition, reputation, or personal relationships[.]

HRS § 707-764(1).  Plaintiffs allege that Defendants threatened to (1) cause bodily injury; (2) cause damage to property; and (3) do "any other act" as defined in the statute.  ECF No. 93 at PageID # 3478.  But, as set forth in more detail to follow, Plaintiffs have introduced absolutely no *evidence* in support of these allegations.

[9] Moreover, this conduct falls outside of the scope of allegations that survived the court's original Order granting summary judgment, ECF No. 66, and could be independently rejected on that basis.

Plaintiffs claim that Defendants threatened them under the catch-all provision of the statute, which prohibits threats to "do any other act that would not in itself substantially benefit the defendant but that is calculated to harm substantially some person with respect to the threatened person's health, safety, business, calling, career, financial condition, reputation, or personal relationships." HRS § 707-764(1)(l).[10]  But Plaintiffs have not offered any evidence that Defendants engaged in such threatening conduct.  Nor could they.  This is because, once again, imposing fines improperly—which is the sum total of Plaintiffs' allegations—simply is not extortion.  *See Zyda*, 2018 WL 4656391, at * 6 (explaining that allegations that "defendants are preventing Plaintiffs from exercising their property rights by illegally demanding money they are not entitled to" do not constitute extortion under HRS § 707-764).

Moreover, even assuming that imposing fines *could* be considered extortionary, Plaintiffs' own theory—that Defendants levied fines for violations of short-term rental requirements to further "their own self-interests"—falls outside the scope of HRS § 707-764(1)(l).  *See, e.g.*, ECF No. 93 at PageID ## 3462, 3483 ("The benefit that [Defendants] received . . . was personal – ruling with an iron fist

---

[10] Plaintiffs also reference HRS § 707-764(1)(a),(b), which provide that threats to cause bodily injury or property damage can amount to extortion.  *See* ECF No. 93 at PageID # 3478. But Plaintiffs put forth no evidence that Defendants have threatened them in these ways, or indeed, in any other way specified in the statute.

produced absolute solitude").  HRS § 707-764(1)(1) plainly requires that the

extortionary act "*would not in itself substantially benefit the defendant* but

[instead] is calculated to harm substantially some person."  *Id.* (emphasis added);

*see also DeRosa*, 185 F. Supp. 3d at 1263 (explaining that HRS § 707-764(1)(1)

"requires . . . that Defendants' alleged acts of extortion did not, in themselves,

benefit Defendants").  Plaintiffs have not presented any evidence that creates a

genuine issue of fact as to the predicate of extortion under HRS § 707-764.

Plaintiffs have also failed to supply any evidence demonstrating that

Defendants violated federal RICO law by engaging in mail fraud.  "The elements

of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud,

and (2) using or causing the use of the mails to further the scheme."  *United States*

*v. Serang*, 156 F.3d 910, 914 (9th Cir. 1998).  A "scheme to defraud" requires the

"specific intent to defraud."  *United States v. Sayakhom*, 186 F.3d 928, 941 (9th

Cir. 1999).  And schemes are considered fraudulent if they are "contrary to public

policy or [] fail to measure up to the 'reflection of moral uprightness, of

fundamental honesty, fair play and right dealing in the general and business life of

members of society.'"  *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir.

1980) (quoting *Gregory v. United States*, 253 F.2d 104, 109 (5th Cir. 1958)).

Plaintiffs allege that Defendants committed mail fraud by "freely and

repeatedly mail[ing] false and materially misleading information to Plaintiffs

attempting to induce and inducing them to part with property."  ECF No. 93 at

PageID # 3481.  Specifically, Plaintiffs allege that Defendants sent "letters wherein

Defendants misrepresented that they had lawful authority to enforce liens against

Plaintiffs' property for the mere suspicion of renting their home for more than 30

days," as well as "numerous" "fraudulent" letters and notices.  *Id.*[11]

       In support of these allegations, Plaintiffs point to a number of letters

sent from the KGECA Board to several Plaintiffs regarding short-term vacation

rentals.  *See* ECF No. 93-1.  Two of the letters, sent prior to enactment of the 2014

Amendment, informed certain Plaintiffs that the KGECA Board had been "made

aware" that they were advertising their properties as short-term vacation rentals on

the internet.  *See* ECF Nos. 93-12 & 93-13.  These letters advised the Plaintiffs that

short-term rentals without a permit were a violation of Maui County Ordinance

3941[12] and requested that they cease and desist their short-term rental activities.

ECF No. 93-12 at PageID # 3635-36; ECF No. 93-13 at PageID # 3637.  The

---

[11] Plaintiffs additionally allege that Defendants "misrepresented that the 2014 Rental Amendment would simply mirror or 'reflect' the County Code when in fact it would have prohibited owners from obtaining permits that President Aber knew at the time owners were entitled to receive."  ECF No. 93 at PageID # 3481.  But this argument is futile; the court has already granted summary judgment in favor of Defendants "with respect to all conduct related to devising, drafting, and recording [the 2014] Amendment."  ECF No. 66 at PageID # 2976.

[12] Maui County Ordinance No. 3941 provides that individuals may not rent their property for less than 180 days unless they receive a permit to do so from the County.  Maui Rev. Ord. No. 3941, §§ 4, 14 (2012); *see* Maui County Code § 19.08.020(K); *see also* Maui County Code ch. 19.65.

letters also advised that under Article XII of the CC&Rs, all property owners at KGE "shall comply with all laws, statutes, ordinances and rules of federal, state and municipal governments applicable to the Properties and any violation thereof may be considered a violation of this Declaration."  ECF No. 93-12 at PageID # 3635; ECF No. 93-13 at PageID # 3637.  And the letters explained that pursuant to Article IV of the CC&Rs, the KGECA, "acting through the Board, shall have the right to enforce federal, state and local laws and ordinance applicable to the Properties."  ECF No. 93-12 at PageID # 3636; *see also* ECF No. 93-13 at PageID # 3638.

Plaintiffs also point to letters issued by the KGECA Board after the 2014 Amendment was passed.  ECF Nos. 93-14, 93-17, 93-18.  These letters were issued after the KGECA Board discovered internet listings for short-term rentals of certain Plaintiffs' property.  The letters explain that, pursuant to the 2014 Amendment, Article XII of the CC&Rs prohibited short-term vacation rentals of less than 180 days and that "[a]ny advertising, in any form of media . . . shall constitute prima facie evidence of the operation of a short-term rental home on the property and as such shall constitute an enforceable violation of this Section."  *See, e.g.*, ECF No. 93-14 at PageID # 3639.  The letters imposed fines of $10,000 for each violation, but allowed recipients to challenge the fine by requesting a hearing from the KGECA Board.  *Id.*

Finally, Plaintiffs point to a letter in which the KGECA Board *waived* a fine they had previously imposed upon receiving evidence that the online listing was posted by a third-party rather than a KGE property owner.  ECF No. 93-21 at PageID # 3659.  The waiver was conditional upon the agreement of the property owner to comply with Article XII of the CC&Rs.  *Id.*

This evidence demonstrates that Defendants made use of the mail, but it in no way supports Plaintiffs' allegations that these mailings were in furtherance of a fraudulent scheme.  Indeed, Plaintiffs argue that these letters and notices were fraudulent, but make absolutely no effort to explain *why* this is so.  And contrary to Plaintiffs' allegations of fraud, the KGECA board members appear to have acted legitimately.  Each letter was issued pursuant to the CC&Rs and clearly sets forth the CC&R provisions that authorize its contents.  Moreover, the court already determined, in its initial Order granting summary judgment, ECF No. 66, that Defendants did *not* act with gross negligence—let alone fraudulently—in drafting, putting to a vote, and enacting the 2014 Amendment.  It follows that attempts to enforce that Amendment by imposing fines were, likewise, legitimate.  And Plaintiffs have not put forth any evidence suggesting that the mailings were anything but legitimate, nor have Plaintiffs provided any evidence of an underlying

fraudulent scheme.[13]  In short, Plaintiffs offer only conclusory allegations that Defendants' mailings were fraudulent.  These allegations are not enough to survive summary judgment.

Because Plaintiffs have failed to provide any evidence that Defendants engaged in a predicate act, there is no genuine issue of material fact as to either their state or federal RICO claims.

///

///

///

///

///

///

///

///

///

///

///

---

[13]  To be clear, to the extent that Plaintiffs allege that the 2014 Amendment itself was fraudulent—and that the letters imposing fines pursuant to that Amendment are therefore in furtherance of a fraudulent scheme—this argument was already rejected by the court in its Order granting summary judgment in favor of Defendants.  *See* ECF No. 66.  Plaintiffs' claims that the Amendment was enacted for a fraudulent purpose offer no support to Plaintiffs' allegations of mail fraud.

# V.  <u>CONCLUSION</u>

There is no genuine issue of material fact for trial as to Plaintiffs'

breach of contract, breach of good faith and fair dealing, federal RICO, or state

RICO claims.  Pursuant to Federal Rule of Civil Procedure 56(f), the court sua

sponte grants summary judgment in favor of Defendants as to each of these claims.

Plaintiffs' remaining claims—trespass, invasion of privacy, and breach of fiduciary

duty—may proceed toward trial.[14]

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 3, 2021.



   /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Nicol et al. v. Kaanapali Golf Estates Community Association et al.*, Civ. No. 17-00251 JMS-KJM, Order Granting Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(f).

---

[14] The court does not opine as to the breach of fiduciary duty claim because it did not initially call that claim into question in its Rule 56(f) notice.  *See* ECF No. 92 at PageID # 3453. Nevertheless, in light of the court's holding that Defendants do not hold a fiduciary duty toward Plaintiffs, Plaintiffs may wish to consider whether to concede that claim.